## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In the Matter of:

**JAMES EDWARD RIESTERER,**

Debtor.

In Bankruptcy:

Case No. 17-55390-mlo
Chapter 7
Hon. Maria L. Oxholm

_____

**TIMOTHY J. MILLER, TRUSTEE**

     Plaintiff,

vs.

**ANN MARIE KLEZA**

     Defendant.

Adv. Pro. No.
Hon. Maria L. Oxholm

_____

## COMPLAINT

Plaintiff Timothy J. Miller, Trustee ("Plaintiff") by his attorneys Clayson,

Schneider & Miller, PC, states for his complaint as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §
   1334(b) and Fed. R. Bankr. P. 7004.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(f).

3. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1408 and § 1409.

4. This adversary proceeding is brought pursuant to Fed. R. Bankr. P. 7001.

## FACTS

5. James Edward Riesterer, Debtor, filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Code on November 3, 2017 (the "Petition Date").

6. Debtor's sworn statements and schedules list assets totaling $372,210.08 and liabilities totaling $120,427.94. Exhibit A - Debtor's Form 106Sum.

7. The majority of the debts listed indicate that they were incurred prior to 2017.

8. Debtor has claimed exemptions in the amount of $357,210.08. Exhibit B - Debtor's Schedule C.

9. Plaintiff is the duly appointed Chapter 7 Trustee in this matter.

10. Upon information and belief, Defendant Ann Marie Kleza ("Kleza") is an individual residing at 203 Russell Street, Saline, Michigan.

11. Kleza is Debtor's ex-wife.

12. After being married for approximately 10 years, Kleza sued Debtor for divorce in 2016 and on September 20, 2017, Debtor and Kleza signed a Settlement Agreement and the Washtenaw Circuit Court entered an agreed-upon Consent Judgment of Divorce and Uniform Spousal Support Order (collectively, the

"Divorce Settlement").

13. Prior to the marriage, Kleza owned real property located at 203 Russell Street, Saline, MI (the "Marital Residence"). During the marriage, the value of the Marital Residence increased by at least $51,400[1]. Exhibit C - Divorce Settlement.

14. During the marriage, Debtor and Kleza's respective retirement accounts also increased in value. Debtor's Fidelity account increased by $235,593, whereas Kleza's TIAA-CREF account increased by $204,957. *Id.*

15. During the marriage, Debtor and Kleza incurred credit card debt totaling at least $80,570[2]. *Id.*

16. Instead of equally splitting the marital assets, the Divorce Settlement made the following awards:

   a. the Marital Residence solely to Kleza;

   b. a right to receive $25,200 worth of spousal support from Debtor to Kleza;

   c. $34,416 of Kleza's retirement funds to Debtor (in the form of a transfer to Debtor's exempt[3] retirement account)[4]; and

---

[1] $51,400 is equal to 50% of the increase in the "State Equalized Value times two" of the marital residence from the year Kleza and Debtor were married to the year they were divorced. While the Divorce Settlement refers to this calculation as Debtor and Kleza's agreed method of determining change in value, Plaintiff does not concede that the increase in value of the Marital Residence is limited by this calculation, and reserves the right to obtain his own independent analysis of the amount of increased value in the Marital Residence.

[2] It is unknown whether two of the credit cards in Kleza's name (totalling $3,500) may are marital debts. Plaintiff does not concede that they are marital debts, and reserves the right to assert otherwise upon further discovery.

[3] Plaintiff does not concede that the transferred funds will be exempt, as the Debtor's exemption deadline has not

d. Kleza's payment of Debtor's $15,000 legal fees. *Id.*

17. Instead of equally allocating the marital debts, the Divorce Settlement allocated only $3,500 to Kleza, and allocated a total $77,070 to Debtor. *Id.,* <u>Exhibit D-Divorce Settlement Analysis Sheet.</u>

18. Debtor testified during his <u>Fed. R. Bankr. P. 2004</u> examination that the credit card debt was incurred for marital purchases as, during their 10 year marriage, Debtor paid grocery, household, vacation, tax and other marital expenses while Kleza paid the mortgage.

19. By his bankruptcy, Debtor is attempting to discharge each of the debts allocated to Debtor by the Divorce Settlement.[5] <u>Exhibit E - Debtor's Schedule E/F.</u>

20. Besides the awards and allocations discussed above, the Divorce Settlement also awarded Kleza a UMCU checking account ($1,000), Huntington savings account ($62,000), Huntington checking account ($28,000), United Technology Employees Savings Account ($14,000), Raymond James IRA ($87,500), as well as other personal property (unknown value)[6]. <u>Exhibit C - Divorce</u>

---

passed and the transfer has not yet occurred.

[4] While the Debtor has a right to receive these funds, the actual funds transfer has yet to occur due to apparent technical issues with the Qualified Domestic Relations Order.

[5] The Divorce Settlement describes a debt as ""American Express Costco Credit Card", whereas Debtor's schedules describes a debt in the same amount as "Citi/Costco Consumer credit". The Divorce Settlement also describes a debt as "Jim Visa" whereas Debtor's Schedules describe a debt in the same amount as "U of M Credit Union Visa". Upon information and belief they refer to the same respective debts and the settlement agreement merely mislabels them.

[6] It is unknown whether these assets are marital property. Plaintiff reserves the right to make his own determination upon further discovery.

Settlement.

21. By virtue of the Divorce Settlement, Defendant transferred his equitable interest in the Marital Residence, incurred a non-dischargeable child support obligation (unsupported by law and by Debtor's diminished income level where Kleza had substantial assets, income, and retirement savings of her own), and took on essentially twice the amount of marital debt he should have been equitably allocated (all to/from Kleza) in exchange for payment of his divorce attorney fees (themselves unsupported by invoices) and an enlarged retirement account.

22. The Divorce Settlement awarded Kleza a net monetary benefit of at least $228,641. Debtor was awarded only $182,739, a total difference of $45,902 ("the Transfer").

23. By virtue of the Divorce Settlement, instead of transferring $15,318 from his retirement account to equalize with Kleza's retirement increase, Debtor bolstered his own account by an extra $34,416.

24. Instead of receiving a liquid cash payout of his interest in the Marital Property of at least $25,700 and using the cash to pay down his debts, Debtor virtually doubled the debt for which he should have been held equitably responsible.

**COUNT I – VOIDABLE TRANSFER UNDER 11 U.S.C. § 548(a)(1)(B)**

The Trustee hereby incorporates the preceding paragraphs by reference, as

though fully set forth herein:

25. Prior to the Consent Judgment of Divorce, the Debtor was entitled to 50% of the marital assets which consisted of at least the increase in value of the Marital Residence and the increase in value of the parties retirement accounts[7]. The Debtor was also responsible for 50% of the accrued marital credit card debt. Based on the Divorce Settlements monetary valuations, Debtor was entitled to 50% of marital assets (equalling $245,975) and was responsible for 50% of the the marital debt (equalling $40,285).

26. Debtor did not receive equivalent value for the Transfer. Debtor was entitled to at least 50% of the increase in value of the Marital Residence in the Divorce action. Instead, Debtor was saddled with 97% of the parties' outstanding credit card debt liability AND the requirement to pay spousal support that he could not afford and that was and still is unsupported by his income level. Although Kleza paid Debtor's divorce legal fees (themselves unsupported by invoices) in the amount of $15,000 and agreed to transfer retirement funds to the Debtor in the amount of $34,416, the monetary responsibilities Debtor undertook in the form of over $25,000 of spousal support payments and over $77,000 of debt allocation vastly outweigh the value received. The net value of assets and debts

---

[7] Again, reserving the right to make the determination that the other assets awarded to Kleza were marital assets.

Debtor received and transferred via the Divorce Settlement do not constitute reasonable equivalent value under 11 U.S.C. § 548(a)(1)(B)(i).

27. The Divorce Settlement occurred on September 20, 2017, within 2 years of the Petition Date under 11 U.S.C. § 548(a)(1).

28. Per Debtor's sworn schedules, at the time of filing Debtor had assets totaling $372,210.08 and liabilities totaling $120,427.94. The debts listed on Debtor's Schedules D and E/F were incurred before the Transfer. While the schedules leave blank many of the "date incurred" question, upon information and belief these particular debts were indeed incurred prior to the Transfer. By Debtor's Schedule C, he has claimed exemptions in the amount of $357,210.08.

29. After excluding property transferred, concealed, or removed with intent to hinder, delay or defraud his creditors (the property sought by this action) and exempt property, pursuant to 11 U.S.C. § 101(32)(A), the sum of the Debtor's debts ($120,427.94) is greater than his property ($372,210.08 minus $357,210.08 in exempt property) by at least $105,427.94. Therefore, Debtor is insolvent under 11 U.S.C. § 101(32)(A) and for purposes of 11 U.S.C. § 548(a)(1)(B)(ii)(I).

30. At the time of and as a result of the Transfer, Debtor was not able to pay his debts as they became due.

31. The Transfer constitutes a "transfer" under 11 U.S.C. § 101(54).

32. Kleza is an insider under the Bankruptcy Code for all relevant purposes under 11 U.S.C. § 101(31).

33. The Transfer constitutes a constructively fraudulent transfer avoidable by Plaintiff pursuant to 11 U.S.C. § 548(a)(1)(B).

WHEREFORE, Plaintiff prays the Court enter judgment for Plaintiff and against Defendant that the transfer is avoided under 11 U.S.C. § 548(a)(1)(B).

## COUNT II – VOIDABLE TRANSFER UNDER M.C.L. § 566.34(1)(b)

The Trustee hereby incorporates the preceding paragraphs by reference, as though fully set forth herein:

34. Plaintiff may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an allowable unsecured claim under 11 U.S.C. § 544(b).

35. Pursuant to 11 U.S.C. § 544(b), the Trustee is authorized to bring a claim under Michigan's version of the Uniform Voidable Transfer Act ("UVTA") at Mich. Comp. Laws § 566.30 *et. seq.*

36. As described above, Debtor did not receive equivalent value for the Transfer pursuant to M.C.L. 566.34(1)(b).

37. As described above, Debtor was insolvent at the time of the Transfer.

38. Debtor should have reasonably believed that he would incur debts beyond his ability to pay as they became due under M.C.L. 566.34(1)(b)(ii).

39. The Transfer is voidable under M.C.L. 566.34(1)(b).

**WHEREFORE,** Plaintiff prays the Court enter judgment against Defendant declaring that the Transfer is void under M.C.L. 566.34(1)(b).

## COUNT III-VOIDABLE TRANSFER UNDER 11 U.S.C. § 548(a)(1)(A)

The Trustee hereby incorporates the preceding paragraphs by reference, as though fully set forth herein:

40. Debtor agreed to the Divorce Settlement because he expected to discharge the large debts for which he unfairly agreed to take responsibility.

41. The Transfer was made to his ex-wife, and insider.

42. The Transfer was of substantially all of Debtor's potentially non-exempt assets.

43. The Transfer allowed Debtor to convert potentially non-exempt assets into exempt, in the form of an increased retirement account. In an equitable division and equalization of the Debtor and Kleza's retirement account increases, Debtor would have had to transfer $15,318 to Kleza instead of accepting $34,416 from her.

44. Therefore, Debtor was able to exempt an additional $49,734.

45. Debtor made the Transfer with actual intent to hinder, delay, or defraud his

creitors pursuant to <u>11 U.S.C. § 548(a)(1)(A)</u>.

**WHEREFORE,** Plaintiff prays the Court enter judgment against Defendant declaring that the Transfer is void under <u>11 U.S.C. § 548(a)(1)(A)</u>.

## <u>COUNT IV-VOIDABLE TRANSFER UNDER M.C.L. § 566.34(1)(a)</u>

The Trustee hereby incorporates the preceding paragraphs by reference, as though fully set forth herein:

46. The Transfer is voidable under <u>M.C.L. § 566.34(1)(a)</u> via <u>11 U.S.C. § 544(b)</u> as

**WHEREFORE,** Plaintiff prays the Court enter judgment against Defendant declaring that the Transfer is void under <u>M.C.L. § 566.34(1)(a)</u>.

## <u>COUNT V – TRANSFEREE LIABILITY UNDER 11 U.S.C. § 550.</u>

The Trustee hereby incorporates the preceding paragraphs by reference, as though fully set forth herein:

47. To the extent the Transfer is avoided under <u>11 U.S.C. §§ 544</u> or <u>548,</u> the Trustee is entitled to recover from the Kleza under <u>11 U.S.C. § 550</u>.

48. The Transfer was made directly by the Debtor to Kleza via the Divorce Settlement.

49. The value of the Transfer is at least $49,734, representing the value of Debtor's increased retirement compared to what Debtor should have equitably received.

50. In the alternative, the value of the Transfer is at least $45,902, representing the net monetary gain transferred to Kleza as a result of the divorce settlement.

51. The Trustee may recover the value of the transfer from Kleza as the initial transferee pursuant to 11 U.S.C. § 550(a)(1).

52. The Transfer is preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

**WHEREFORE,** Plaintiff prays this Court enter judgment for Plaintiff and against Kleza in the amount of $49,734 is entered against Kleza under 11 U.S.C. § 550, and that this amount is preserved for the benefit of the Debtor's estate under 11 U.S.C. § 551.

Respectfully submitted,

Dated: September 24, 2018

*/s/ David P. Miller, attorney*
David P. Miller (P-79911)
Clayson, Schneider & Miller, PC
645 Griswold, Suite 3900
Detroit, MI 48226
(313) 237-0850
david@claysonschneidermiller.com

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **James Edward Riesterer** |
| | First Name ___ Middle Name ___ Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name ___ Middle Name ___ Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF MICHIGAN |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:     Summarize Your Assets

**Your assets**
Value of what you own

1. **Schedule A/B: Property** (Official Form 106A/B)
   1a. Copy line 55, Total real estate, from Schedule A/B........................................................... $ 0.00
   1b. Copy line 62, Total personal property, from Schedule A/B.................................................. $ 372,210.08
   1c. Copy line 63, Total of all property on Schedule A/B.......................................................... $ 372,210.08

### Part 2:     Summarize Your Liabilities

**Your liabilities**
Amount you owe

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
   2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* $ 25,277.00

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
   3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*............................... $ 0.00
   3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*........................... $ 95,150.94

   **Your total liabilities** $ 120,427.94

### Part 3:     Summarize Your Income and Expenses

4. *Schedule I: Your Income* (Official Form 106I)
   Copy your combined monthly income from line 12 of *Schedule I*.................................................................. $ 4,892.47

5. *Schedule J: Your Expenses* (Official Form 106J)
   Copy your monthly expenses from line 22c of *Schedule J*........................................................................ $ 4,842.96

### Part 4:     Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ■ Yes

7. **What kind of debt do you have?**

   ■ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum        Summary of Your Assets and Liabilities and Certain Statistical Information        page 1 of 2

# EXHIBIT A - PAGE 002

Debtor 1 **James Edward Riesterer**                    Case number *(if known)*

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

$ 5,351.67

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ 0.00 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ 0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $ 0.00 |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com            Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **James Edward Riesterer** |
| | First Name — Middle Name — Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name — Middle Name — Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF MICHIGAN |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt          4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

**Part 1:          Identify the Property You Claim as Exempt**

1.  **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

    ☐ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

    ☑ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2.  **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Sofa, 46" TV, entertainment center, personal computer, stereo, end tables, kitchen table, chairs, microwave oven, dishes/flatware, , pots/pans, bed, dressers, lamps, telephones, cell phones.**<br>Line from *Schedule A/B*: **6.1** | $4,110.00 | ☑ $4,110.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Family pictures, compact disks**<br>Line from *Schedule A/B*: **6.2** | $100.00 | ☑ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **HP printer, scanner, fax**<br>Line from *Schedule A/B*: **6.3** | $50.00 | ☑ $50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Wedding ring, watches**<br>Line from *Schedule A/B*: **12.1** | $1,400.00 | ☑ $1,400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(4)** |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Taylor 814CE guitar, Taylor 562 CE, LR Baggs Kago amp, Egnater 40 tweakjer amp, Gibson**<br>Line from *Schedule A/B*: **14.1** | $4,900.00 | ■        $4,900.00<br>□   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| **Checking: UMCU account ending in 1086**<br>Line from *Schedule A/B*: **17.2** | $4.17 | ■        $4.17<br>□   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| **Savings and checking: Chase account ending in 6679**<br>Line from *Schedule A/B*: **17.3** | $2,495.91 | ■        $2,495.91<br>□   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| **401(k): Fidelity**<br>Line from *Schedule A/B*: **21.1** | $341,000.00 | ■        $341,000.00<br>□   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(12) |
| **IRA: Raymond James account**<br>Line from *Schedule A/B*: **21.2** | $1,000.00 | ■        $1,000.00<br>□   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(12) |
| **Rental deposit: Apartment security deposit**<br>Line from *Schedule A/B*: **22.1** | $750.00 | ■        $750.00<br>□   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| **Federal: 2017 tax refunds**<br>Line from *Schedule A/B*: **28.1** | $1,400.00 | ■        $1,400.00<br>□   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   □ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       □ No

       □ Yes

# EXHIBIT C - PAGE 001

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW

ANNE MARIE KLEZA,

      Plaintiff,

vs.

      Case No. 16-3008-DO
      Hon. Patrick J. Conlin

JAMES E. RIESTERER,

      Defendant.

_____/

Stefanie K. Meisel (P58656)
BAKER, STRINGER & MEISEL, LLP
203 S. Zeeb Rd., Ste. 206
Ann Arbor, MI 48103
734-663-8111
meisel@a2law.net

Paul C. Fessler (P61361)
FESSLER LAW, P.C.
Attorneys for Defendant
220 E. Huron, Suite 415
Ann Arbor, MI 48104
(734) 369-6448
paul@fesslerlawpc.com
_____/

## CONSENT JUDGMENT OF DIVORCE

SEP 2 0 2017

**Entered:**_____

### HONORABLE PATRICK J. CONLIN

    This matter came before the Court upon the agreement of the parties following Plaintiff's filing of a Complaint for Divorce. The parties appeared in person or through counsel and the proofs were taken in open Court from which it satisfactorily appears to this Court that the material facts alleged in the Complaint are true, and that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. The parties have signed a Divorce

2651126.1

# EXHIBIT C - PAGE 002

Settlement Agreement dated September 20, 2017, (the "Settlement Agreement") that they have agreed will be incorporated and merged into this Judgment as set forth below.

*IT IS HEREBY ORDERED:*

## DISSOLUTION OF MARRIAGE

The marriage between the Plaintiff, ANNE MARIE KLEZA, and the Defendant, JAMES E. RIESTERER, is dissolved, and a divorce is granted.

## ADOPTION OF SETTLEMENT AGREEMENT

The provisions of the Settlement Agreement between Plaintiff and Defendant ("the Settlement Agreement") are fully adopted and incorporated by reference, and merged, in this Judgment and the terms of the Settlement Agreement are adopted in their entirety as the Order of this Court. The Court retains jurisdiction to interpret and enforce, but not to modify, the provisions of the Settlement Agreement. The parties shall be bound by all of the terms of the Settlement Agreement regardless of whether those terms are specifically referred to or re-stated in this Judgment. The parties further agree to defend, indemnify, and hold each other harmless from any and all claims, damages, losses, or suits, including attorney fees and costs, arising out of, or resulting from, any debt obligation incurred, whether disclosed or undisclosed in the Settlement Agreement.

## SPOUSAL SUPPORT

Spousal support is awarded pursuant to the terms of the parties' Settlement Agreement. A Uniform Spousal Support Order shall be entered.

## RETIREMENT

Except as otherwise provided in the Settlement Agreement, each party is awarded, free of any claim by the other, all right, title and interest that he/she may have in: (1) any pension, annuity, or retirement benefits in his/her own name; (2) any accumulated contributions in any pension, annuity or retirement system in his/her own name; or (3) any right or contingent right in and to unvested pension, annuity or retirement benefit in his/her own name. This Judgment incorporates by reference any provisions in the Settlement Agreement calling for division of retirement funds or for entry of Qualified Domestic Relations Orders or Orders Assigning IRA's.

## LIFE INSURANCE

2

# EXHIBIT C - PAGE 003

The provisions of the Settlement Agreement relating to Life Insurance are incorporated in this Judgment. Except as otherwise provided in this Judgment or the Settlement Agreement, this Judgment extinguishes all rights that either party may have in any policy or contract of life insurance, endowment or annuity on the life of the other party, including survivorship interests under ERISA or other qualified plans on which the party was named as beneficiary or to which he/she became entitled by assignment or change of beneficiary; each party shall hereafter have the right to designate any person as beneficiary of insurance on his/her life; and each party waives the right to claim any interest as beneficiary or survivor in any such plan or policy, unless affirmatively re-designated as beneficiary after the date of this Judgment. The parties acknowledge that it may be necessary to take specific steps to terminate a spouse's interest in death benefits payable under ERISA plans, trusts, or other instruments, or to name beneficiaries as required by this Judgment, *and each party acknowledges that he/she has been advised to contact his/her Plan Administrator, estate planning advisors, or other persons necessary to ensure that beneficiaries are properly designated after this divorce is final.*

## DOWER

The provisions made in this Judgment for each party shall serve as consideration for each party's waiver of any rights, including dower, that either may have in the lands of the other, and except as otherwise provided here, each shall hold his/her remaining lands free of any claim by the other.

## EXECUTION AND DELIVERY OF INSTRUMENTS

Each party shall, promptly upon request, or (where applicable) within the time limits set forth in the Settlement Agreement, sign and deliver to the other party any endorsements, documents or assurances that the other party may reasonably require to give effect to the terms of this Judgment or to permit the orderly transaction of business by the other party in connection with property awarded to him/her. If either party fails to comply with this requirement, then this Judgment shall have the same effect as the requested signature, endorsement, document or assurance. A true or certified copy of this Judgment may be recorded or filed with any appropriate agency or Register of Deeds; and may be presented in the place of the requested item.

## DISCOVERY; ADVICE OF COUNSEL

The parties acknowledge that they have had independent legal advice. Each understands that he/she has the right to conduct pre-trial discovery, with court enforcement if necessary, to assist in learning about the other's assets, income, or other relevant facts. These rights include the

3

# EXHIBIT C - PAGE 004

right to question the other party or other witnesses under oath at deposition or trial. The parties acknowledge that by entering into this Consent Judgment they are waiving such rights to the extent they have not exercised them.

## WARRANTY OF DISCLOSURE

Each of the parties warrants that the assets described in the Settlement Agreement are all of the material assets in which either has an interest and that each has fully disclosed to the other all material assets in which either has an interest. The Court retains jurisdiction to make a disposition of any undisclosed property interest or debts.

## RETENTION OF JURISDICTION

This Court specifically reserves and retains jurisdiction over this case and the parties for the purpose of assuring compliance with the executory provisions of this Judgment and the Settlement Agreement and reserves the right to make such further Orders as may be necessary to implement those terms.

/S/ PATRICK J. CONLIN, JR.

_____

HONORABLE PATRICK J. CONLIN

*APPROVED BY:*

_____
Stefanie K. Meisel (P58656)
BAKER, STRINGER & MEISEL, LLP
Attorney for Plaintiff

_____
Paul Fessler (P61361)
FESSLER LAW, P.C.
Attorney for Defendant

_____
Anne Marie Kleza, Plaintiff

_____
James E. Reisterer, Defendant

4

# EXHIBIT C - PAGE 005

Approved, SCAO

| Original - Court<br>1st copy - Plaintiff | 2nd copy - Defendant<br>3rd copy - Friend of the court |
|---|---|

| **STATE OF MICHIGAN** | **UNIFORM SPOUSAL SUPPORT ORDER** | **CASE NO.** |
|---|---|---|
| 22nd **JUDICIAL CIRCUIT** | **(PAGE 1)** | 16-3008-DO |
| Washtenaw **COUNTY** | ☐ EX PARTE ☐ TEMPORARY ☐ MODIFICATION ☑ FINAL | Hon. Patrick J. Conlin |

Court address
101 E. Huron St., P.O. Box 8645, Ann Arbor, MI 48107

Court telephone no.
(734) 222-3001

| Plaintiff's name, address, and telephone no. | | Defendant's name, address, and telephone no. |
|---|---|---|
| Ann Marie Kleza<br><br>203 Russell Street<br>Saline, MI 48176 | v | James E. Riesterer<br><br>170 Stevens, Apt. 204<br>Ypsilanti, MI 48197 |
| Plaintiff's attorney name, bar no., address, and telephone no.<br><br>Stephanie K. Meisel (P58656)<br>203 S. Zeeb Road, Ste 206<br>Ann Arbor, MI 48103<br>(734) 663-8111 | | Defendant's attorney name, bar no., address, and telephone no.<br><br>Paul C. Fessler (P61361)<br>220 E. Huron, Suite 415<br>Ann Arbor, MI 48104<br>(734) 369-6448 |
| Plaintiff's source of income name, address, and telephone no. | | Defendant's source of income name, address, and telephone no.<br><br>University of Michigan<br>G395 Wolverine Tower<br>Ann Arbor, MI 48109 |

This order is entered ☐ after hearing. ☑ on stipulation/consent of the parties.

**IT IS ORDERED, UNLESS OTHERWISE ORDERED IN ITEM 11:** ☐ Standard provisions have been modified (see item 11).

1. **Spousal Support.** Spousal support shall be paid monthly through the Michigan State Disbursement Unit as follows:

| Payer: | Payee: | Amount: | Effective date: |
|---|---|---|---|
| Defendant | Plaintiff | $          $1,400.00 | 11/01/2017 |

2. Income withholding takes immediate effect for those items payable through the Michigan State Disbursement Unit.

3. This order continues until the death of the payee or until the earliest of the following events:
   ☑ Date: _____05/01/2019_____ ☑ $_____$25,200.00____ is paid.
   ☐ Remarriage of the payee. ☐ Death of the payer.
   ☑ Other (specify all other events): _____
   
   Spousal support is non-modifiable in duration and amount pursuant to the terms of the parties' settlement agreement.

☑ 4. For tax purposes, the payments will be deductible to the payer and included in the income of the payee.

☐ 5. Payments that must be paid directly to the third party (not to the payee) are listed below. (Payments to be made directly to a third party are not payable through the Michigan State Disbursement Unit or friend of the court.)

| Type | Amount Per Month | Start Date | Pay to | End Date |
|---|---|---|---|---|
| | $ | | | |
| | $ | | | |
| | $ | | | |
| | $ | | | |

**(See page 2 for the remainder of the order.)**

FOC 10b (3/13) **UNIFORM SPOUSAL SUPPORT ORDER, PAGE 1**

MCL 552.13, MCR 3.211

# EXHIBIT C - PAGE 006

Approved, SCAO

Original - Court
1st copy - Plaintiff

2nd copy - Defendant
3rd copy - Friend of the court

| STATE OF MICHIGAN<br>22nd JUDICIAL CIRCUIT<br>Washtenaw COUNTY | UNIFORM SPOUSAL SUPPORT ORDER<br>(PAGE 2)<br>EX PARTE ☐ TEMPORARY ☐ MODIFICATION ☐ FINAL ☑ | CASE NO.<br>16-3008-DO<br>Hon. Patrick J. Conlin |
|---|---|---|

Court address
101 E. Huron St., P.O. Box 8645, Ann Arbor, MI 48107

Court telephone no.
(734) 222-3001

| Plaintiff's name<br>Ann Marie Kleza | v | Defendant's name<br>James E. Riesterer |
|---|---|---|

6. **Retroactive Modification, Surcharge for Past-Due Support, and Liens for Unpaid Support.** Support is a judgment the date it is due and is not retroactively modifiable. A surcharge may be added to past-due support. Unpaid support is a lien by operation of law and the payer's property can be encumbered or seized if an arrearage accrues for more than the periodic support payments payable for two months under the payer's support order.

7. **Address, Employment Status, Health Insurance.** Both parties shall notify the friend of the court in writing of: a) their mailing and residential addresses and telephone numbers; b) the names, addresses, and telephone numbers of their sources of income; c) their health-maintenance or insurance companies, insurance coverage, persons insured, or contract numbers; d) their occupational or drivers' licenses; and e) their social security numbers unless exempt by law pursuant to MCL 552.603. Both parties shall notify the friend of the court in writing within 21 days of any change in this information. Failure to do so may result in a fee being imposed.

8. **Fees.** The payer of support shall pay statutory and service fees as required by law.

9. **Prior Orders.** This order supersedes all prior spousal support orders. Past-due amounts owed under any prior support order are preserved.

10. **Property Settlement.** All property settlement (alimony in gross) payment obligations that are set forth in the judgment are not part of this order.

11. **Other: (Attach separate sheets as needed.)**

| Plaintiff (if consent/stipulation) | Date | Defendant (if consent/stipulation) | Date |
|---|---|---|---|
| Plaintiff's attorney | Date | Defendant's attorney | 9-20-17 Date |

Date SEP 2 0 2017

/S/ PATRICK J. CONLIN, JR.
Judge                                    Bar no.

**CERTIFICATE OF MAILING**

I certify that on this date I served a copy of this order on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined in MCR 3.203.

Date

Signature

**COURT USE ONLY**

# EXHIBIT C - PAGE 007

## SETTLEMENT AGREEMENT

This agreement "Agreement" was signed by Ann Kleza ("Ann") and James Riesterer ("Jim") on the date indicated below.

**INTRODUCTION**

1. We were married on October 2, 2010 in Saline, Michigan. This is a second marriage for Ann and a third marriage for Jim.

2. This agreement is made in contemplation of divorce.

3. Jim is 57 years old and is employed by University of Michigan Health System.

4. Ann is 63 years old and is also employed by University of Michigan Health System.

5. There are no children of the marriage.

6. At the time of signing this agreement, the parties have been living separate and apart for approximately 2 years. Ann is presently residing at 203 Russell Street, Saline, Michigan and Jim is presently residing at, 170 Stevens, Apt. 204 Ypsilanti, Michigan.

7. Certain differences have arisen between us, a consequence of which is that an action for divorce has been filed by Ann.

8. Each of us has fully disclosed to the other all of his and her property, assets, and debts both marital and individual.

9. Before signing this agreement, each of us had the opportunity to consult with an attorney. Our attorneys have also reviewed and signed this agreement. Each of us now signs this agreement freely and voluntarily.

10. This agreement is a settlement of all issues arising out of our marriage and divorce. We agree:

    a. To incorporate and merge the terms of this mediation agreement into our Judgment of Divorce.

    b. That our obligations in the agreement are adequate consideration for all of the provisions of the agreements; and

    c. The entire agreement is contractually binding on us, and is enforceable in a court that has jurisdiction over us.

Therefore, we agree:

**SPOUSAL SUPPORT**

1. **No spousal support to Jim.** No spousal support shall be awarded to Jim and same is

1

# EXHIBIT C - PAGE 008

forever barred.

2. **Non-modifiable spousal support for Ann.** Beginning November 1, 2017, Jim shall pay Ann non-modifiable spousal support in the amount of $1,400.000 per month for a period of 18 (eighteen) months. Non-modifiable means that neither the amount nor duration of support may be changed or reviewed by the Court, for any reason. The term and amount of the obligation shall not be lengthened nor shortened nor increased or decreased for any reason other than for the death of Recipient. The parties intend that this is a complete waiver of modifiability as required by *Staple v. Staple*, 237 Mich App 805; 603 NW2d 278 (1999).

This support shall be paid through the Washtenaw County Friend of the Court via Order of Income Withholding. Jim shall make Ann the beneficiary of any life insurance policy he may have in his name to secure the outstanding amount of his obligation.

In addition, Jim shall be responsible for any and all fees and costs related to collection if he fails to make timely spousal support payments.

The parties have also been advised that the Michigan Court of Appeals strictly upholds agreements for non-modifiable spousal support, even when the payer has fallen on extremely hard times due to economic and family circumstances that are beyond his or her control (Rose v Rose, ---N.W.2d 2013, WL 2505919, decided June 22, 2013).

Both parties have been advised that neither of us may file a motion with the Court for a review of the amount or duration of spousal support. If either of us files such a motion, he or she shall be liable for any resulting consequential damages to the other.

## HEALTH INSURANCE

3. At the time of signing this agreement, we each agree to be responsible for our own health insurance coverage and payment for same.

## PROPERTY SETTLEMENT

4. **Real Property.**

   A. **203 Russell Street, Saline, Michigan.** Ann is awarded the real property located at 203 Russell Street, Saline, Michigan free and clear of any claim or interest by Jim. Ann shall hold Jim harmless from any and all liability thereon. As the mortgage is in Ann's name alone, there shall be no requirement to refinance the property. The parties acknowledge and agree that Ann owned this home prior to marriage and accordingly, have agreed to a compromise wherein Jim would receive one-half of the increase in value of this home (with the valuations for the property determined by utilizing two times the State Equalized Values for both time periods) from the date of marriage through June 30, 2017.

5. **Personal Property.**

2

# EXHIBIT C - PAGE 009

A. **Vehicles.** Each party is awarded any and all vehicles in his or her sole name free and clear of the other party and shall hold the other party harmless from any and all liability thereon. More specifically, Jim is awarded the 2015 Subaru Crosstrek, which has an outstanding liability with Chase Bank in the amount of approximately $24,000 and the 2013 Subaru Impreza, which has an outstanding liability with Lake Trust Credit Union in the approximate amount of $26,000. Ann is awarded the 2014 Subaru Forester, which has an outstanding liability with JP Morgan Chase in the approximate amount of $19,000.

B. **Bank accounts:** At the time of signing this agreement, the parties have one remaining joint checking account with TCF having an account balance of approximately $250. Jim is awarded this bank account free and clear of Ann and he shall close this account or otherwise remove Ann's name from the account within 30 days of signing this agreement.

All remaining bank accounts are held individually. The parties agree that for these remaining accounts, each party is awarded any and all bank accounts in his or her sole name, free and clear of any claim or interest of the other party. More specifically, the parties are awarded as follows:

1. **TCF checking account having the last four digits of 0745.** This account is in Jim's name alone and has an approximate balance of $1,300. Jim is awarded this account free and clear of any claim or interest by Ann.

2. **UMCU checking account having last four digits of 1086.** This account is in Jim's name alone and has an approximate balance of $500. Jim is awarded this account free and clear of any claim or interest by Ann.

3. **UMCU checking account having last four digits of 2190.** This account is in Ann's name alone and has an approximate balance of $1,000. Ann is awarded this account free and clear of any charlaim or interest by Jim.

4. **Huntington (f/k/a First Merit) Savings.** This account is in Ann's name alone and has an approximate balance of $62,000. The parties acknowledge and agree that the monies in this account are from an inheritance received by Ann due to the death of her father and further that they were received prior to the marriage. Ann is awarded this account free and clear of any claim or interest by Jim.

5. **Huntington (f/k/a First Merit) Checking.** This account is in Ann's name alone and has an approximate balance of $28,000. Ann is awarded this account free and clear of any claim or interest by Jim.

C. **Retirement accounts.** The parties hold the following retirement accounts:

1. **United Technology Employees Savings Account.** This account, which is believed to be a defined contribution plan, was inherited by Ann from her father. It has an approximate balance of $14,000. Ann is awarded this account free and

3

# EXHIBIT C - PAGE 010

clear of any claim or interest by Jim.

2. **Raymond James IRA.** This account, which was a roll-over from a pre-marital account, is held by Ann alone and has an account balance of approximately $87,500. Ann is awarded this account free and clear of any claim or interest by Jim.

3. **TIAA-CREF.** This account is held by Ann alone and has an account balance of approximately $481,274 as of June 30, 2017. The parties acknowledge and agree that Ann had a premarital account balance of $276,317.

4. **Fidelity 401(A) and 403(b) Retirement Accounts.** These accounts are held by Jim alone and have an approximate balance of $341,997 as of June 30, 2017. The parties acknowledge and agree that Jim had a premarital account balance of $106,404.

5. **Equalization of Accounts/Assignment between the parties.** The parties have agreed to equalize the marital portions of Ann's TIAA-CREF and Jim's Fidelity, giving each party the full value of his or her premarital contributions to each account.

6. **General terminations.** We understand and agree that entry of a Judgment of Divorce will terminate all rights either of us has in the other's pensions, annuities or retirement plans, whether vested or unvested, accumulated or contingent, except as specifically provided here in this Mediation Agreement for employee benefits accrued during the marriage.

D. **Jewelry, clothing, furnishings, tools, and all other personal property.** Jim moved into his own apartment on or around September 2015 and we have already divided the vast majority of our personal property items at the time of this agreement. However, we do agree that there remain some items at the former marital residence, located at 203 Russell Street, Saline, Michigan. The parties specifically agree that Jim is awarded all items now in his possession, as well as the following items located at the former marital home: tools; fishing gear; waders; work bench; twin bed with mattresses and linens for same; air compressors (with the exception of the old round red air compressor, which Ann shall keep); two ladders; ; his kitchen knives; artwork he owned prior to the marriage; snowshoes and poles; kayak(Ann thinks he already has this, but will give to him if she finds it); and charcoal grill.

Jim shall remove his personal property items from Ann's home no later October 31, 2017. The parties shall coordinate the property exchange and Ann will arrange to have these items moved to the driveway in a covered private area before the agreed-upon exchange date(s). If Jim fails to remove these items by October 31, 2017, Jim shall no longer have claim to this property and Ann shall retain, donate, or dispose of the remaining items as she sees fit.

6. Total Property Settlement:  The parties have reached an agreement regarding a total property settlement.

4

# EXHIBIT C - PAGE 011

A. Ann shall pay the sum of $15,000.00 to Jim's attorney's office toward attorney fees within ten (10) days of execution of this Agreement.

B. In addition to the attorney fee payment above, Ann shall transfer an additional $34,416.00 to Jim via Qualified Domestic Relations Order from her TIAA Traditional Account (TIAA ***5070-2) or such other account determined by Ann's financial advisor in consultation with QDRO Express and the Plan Administrator. There shall be no gain and losses on this transfer. The parties shall utilize attorney Robert Treat of QDRO Express to prepare the necessary QDRO documentation at the parties' shared (50/50) expense.

**7. Unsecured debt.** The parties agree that each party is awarded the credit card debt held in his or her sole name and that they shall defend, indemnify, and hold the other party harmless from any and all claims, damages, losses or suits, including attorney fees and costs, arising out of, or resulting from, any debt obligation incurred, whether disclosed or undisclosed at the time of this Agreement. More specifically, we agree as follows:

A. **Amex (Ann).** Ann has an American Express Credit Card which has an outstanding balance of approximately $1,000. Ann is awarded this debt and shall hold Jim harmless therefrom.

B. **UMCU Visa.** Ann has a Visa credit card through the University of Michigan Credit Union which has an approximate balance of $2,500. Ann is awarded this debt and shall hold Jim harmless therefrom.

C. **Amex (Jim).** Jim has an American Express Costco Credit Card which has an outstanding balance of $26530. Jim is awarded this debt and shall hold Ann harmless therefrom.

D. **Amex (Jim).** Jim has an American Express Blue Card which has an approximate outstanding balance of $26,000. Jim is awarded this debt and shall hold Ann harmless therefrom.

E. **Capital One.** Jim has a Capital One credit card which has an approximate outstanding balance of $4,540. Jim is awarded this debt and shall hold Ann harmless therefrom.

F. **Visa.** Jim has a Visa credit card which has an approximate outstanding balance of $20,000. Jim is awarded this debt and shall hold Ann harmless therefrom.

G. **Guitar Center and Best Buy.** Jim has credit cards with Guitar Center and Best Buy, neither of which presently carries a balance. Jim is awarded these credit cards and any and all outstanding liability associated therewith, holding Ann harmless therefrom.

6. **Other Debt.** The parties' debts not otherwise provided for in the Agreement shall be paid by the party who incurred them. The parties agree that at the time of signing this

5

**EXHIBIT C - PAGE 012**

agreement, there are no jointly held credit cards or unsecured debts not otherwise set forth above.

## LIFE INSURANCE

7. **General terminations.** With the exception of the life insurance to secure Jim's spousal support payments (above), we understand that the Judgment of Divorce will terminate all other rights to benefit from each other's life insurance.

## NOTICE TO CHANGE BENEFICIARIES

8. We understand that the federal Employee Retirement Income Security Act of 1974 (ERISA) governs changes to beneficiary designations for the life insurance and retirement plans provided as employment benefits. This agreement serves as notice to both of us that we are required to affirmatively change the beneficiary designations on employer-provided life insurance and retirement plans if required to comply with the provisions above. We agree that we will each provide the other with a copy of the notice we have filed with our employer, and a copy of our employer's acknowledgment.

## TAX MATTERS

**Final Tax Returns:** The parties shall consult with their tax professional and/or bankruptcy counsel regarding the most advantageous filing status for the 2017 income tax year.

In this regard:

**(a)** **Preparation:** The parties, at equal expense, shall promptly have a professional tax return preparer prepare the returns. Each party shall timely gather and furnish the information necessary to prepare the returns, and cooperate in every way.

**(b)** **Filing:** The parties shall promptly execute and file the returns, and any amendments later filed, upon preparation.

**(c)** **Tax Amounts Due:** Any tax amount due under the returns shall be assumed and paid by the parties equally.

**(d)** **Refunds:** If there are refunds due to the parties for the 2017 income tax year, the parties shall cooperate with their tax professional and equally divide any refunds.

**(e)** **Hold Harmless:** Each party shall hold the other harmless from any taxes, penalties, interest, late fees, costs, or other expense imposed upon the return or otherwise incurred as a result of errors they commit, or by inaccuracies in or omissions of information they submit, or from their delays in providing information, preparing, signing or filing the return. Each shall be liable only to the extent of the error, inaccuracy, omission or delay caused by him or her.

# EXHIBIT C - PAGE 013

**(f)**     **Failure to Comply:** If a party fails to comply with the provisions of this paragraph, he or she shall be liable to the other party for all damages incurred by the other party as a result of the failure, including taxes, penalties, interest and all related expenses (including but not limited to attorney and accountant fees).

**Tax Filings and Consequences**: Each party shall be responsible for any tax consequences relating to any property he or she receives or transfers or payments he or she receives or makes under this Judgment.

**Audit provision.** If any prior joint tax return is audited, we will cooperate with each other in resolving the audit by engaging a mutually agreeable accountant and will be responsible to equally assume and pay any costs, taxes, penalties or interest as a result of the audit. If perchance the result is a refund, we shall share the refund.

## ATTORNEY AND MEDIATION FEES

1. We agree to share all mediation expenses equally and to pay our own attorney fees.

## FULL DISCLOSURE

2. Each of us has fully disclosed all of our assets and liabilities, both marital and individual, and all such assets and liabilities are listed in the agreement.

## HOLD HARMLESS/INDEMNIFICATION

3. Each of us agrees, promises, and represents that he/she shall defend, indemnify, and hold harmless from any and all claims, damages, losses, or suits, including attorney fees and costs, arising out of, or resulting from, any debt obligation incurred, whether disclosed or undisclosed at the time of this Agreement.

## CONCLUDING PROVISIONS

4. **Effective date.** The provisions of this agreement shall be effective when this document is signed by both of us.

5. **Documents.** Each of us will promptly execute and deliver to the other the documents required to carry out the terms of the agreement.

6. **Modification.** If, in the future, we agree to modify this agreement, that change will be in writing, dated, and signed by both of us.

7. **In the event of divorce.** Ann has filed an action for divorce. This agreement shall be incorporated and merged into the final Judgment of Divorce.

8. **Bar of dower.** Dower is the wife's common law rights in real property owned by her husband. The Judgment of Divorce will bar dower.

7

# EXHIBIT C - PAGE 014

9. **Governing law.** We signed this agreement in the State of Michigan, and we agree that Michigan law shall govern its interpretation.

10. **Entire agreement.** This document is our entire agreement. It supersedes any prior agreements between us. There are no other agreements between us other than those expressly set forth in this document.

**Witnesses:**

_____

_____

**Approved as to form only:**

_____
Stefanie Meisel (P58656)
Attorney for Ann

**Approved as to form and Content:**

_____
Ann Kleza
Date: September 20, 2017

_____
James Riesterer
Date: September 20, 2017

_____
Paul Fessler (P61361)
Attorney for Jim

8

| MARITAL ASSETS | |
|---|---|
| Marital Asset | Value |
| 203 Russell Increase | $51,400.00 |
| Jim Fidelity Increase | $235,593.00 |
| Ann TIAA Increase | $204,957.00 |
| **TOTAL** | **$491,950.00** |

Note: 203 Russell Value Increase is based on difference between 2x SEV from marriage to divorce. However Trustee reserves the right to make his own determination of the actual increase in value.

| MARITAL DEBTS | |
|---|---|
| Marital Debt | Value |
| AMEX (Ann) | -$1,000.00 |
| UMCU Visa | -$2,500.00 |
| AMEX (Jim Costco) | -$26,530.00 |
| AMEX (Jim Blue) | -$26,000.00 |
| Capital One | -$4,540.00 |
| Jim Visa | -$20,000.00 |
| **TOTAL** | **-$80,570.00** |

Note: A number of other accounts are listed in the Divorce Settlement and it is unknown whether these assets are marital property (see final table). Plaintiff reserves the right to make his own determination upon further discovery.

| TOTALS, NET AND FAIR NET SPLIT | |
|---|---|
| Total Marital Assets | $491,950.00 |
| Total Marital Debts | -$80,570.00 |
| Net Marital Estate Value | $411,380.00 |
| **50% (Ann/Jim's Fair Net)** | **$205,690.00** |

| ACTUAL JoD SPLIT | | |
|---|---|---|
| **Marital Property** | **Ann** | **Jim** |
| 203 Russell Increase | $51,400.00 | $0.00 |
| Jim Fidelity Increase (after JoD $34,416.00 adjustment) | n/a | $270,009.00 |
| Ann TIAA Increase (after JoD $34,416.00 adjustment) | $170,541.00 | n/a |
| AMEX (Ann) | -$1,000.00 | $0.00 |
| UMCU Visa | -$2,500.00 | $0.00 |
| AMEX (Jim Costco) | $0.00 | -$26,530.00 |
| AMEX (Jim Blue) | $0.00 | -$26,000.00 |
| Capital One | $0.00 | -$4,540.00 |
| Jim Visa | $0.00 | -$20,000.00 |
| **Total (marital property/debts)** | **$218,441.00** | **$192,939.00** |
| | | |
| **Non-marital adjustments** | **Ann** | **Jim** |
| Spousal Support | $25,200.00 | -$25,200.00 |
| Divorce Atty Fee | -$15,000.00 | $15,000.00 |
| **Total Adjustments** | **$10,200.00** | **-$10,200.00** |
| | | |
| **GRAND TOTAL** | **$228,641.00** | **$182,739.00** |

| CONSTRUCTIVE FRAUD: What should Jim have received? | | |
|---|---|---|
| **Marital assets/debts** | **Jim got per JoD** | **Jim should have got in equitable split** |
| 203 Russell Increase | $0.00 | $25,700.00 |
| Jim's Fidelity Increase | $270,009.00 | $220,275.00 |
| AMEX (Ann) | $0.00 | -$500.00 |
| UMCU Visa | $0.00 | -$1,250.00 |
| AMEX (Jim Costco) | -$26,530.00 | -$13,265.00 |
| AMEX (Jim Blue) | -$26,000.00 | -$13,000.00 |
| Capital One | -$4,540.00 | -$2,270.00 |
| Jim Visa | -$20,000.00 | -$10,000.00 |
| **Totals** | **$192,939.00** | **$205,690.00** |
| | | |
| **Non-marital adjustments** | **Jim got per JoD** | **Jim should have got in equitable split** |
| Spousal Support | -$25,200.00 | $0.00 |
| Attorneys fees | $15,000.00 | $0.00 |
| **Total adjustments** | **-$10,200.00** | **$0.00** |
| | | |
| **Grand Total** | **$182,739.00** | **$205,690.00** |

# EXHIBIT D - PAGE 003

| INTENTIONAL FRAUD - What's left that's not exempt? | | |
|---|---|---|
| Marital assets *AVAILABLE TO BE USED TO PAY CREDITORS* | Jim got per JoD | Jim should have got in equitable split |
| 203 Russell Increase | $0.00 | $25,700.00 |
| **Total available** | **$0.00** | **$25,700.00** |

| Marital debts allocated | Jim got per JoD | Jim should have got in equitable split |
|---|---|---|
| AMEX (Ann) | $0.00 | -$500.00 |
| UMCU Visa | $0.00 | -$1,250.00 |
| AMEX (Jim Costco) | -$26,530.00 | -$13,265.00 |
| AMEX (Jim Blue) | -$26,000.00 | -$13,000.00 |
| Capital One | -$4,540.00 | -$2,270.00 |
| Jim Visa | -$20,000.00 | -$10,000.00 |
| **Totals allocated** | **-$77,070.00** | **-$40,285.00** |

| Non-marital adjustments | Jim got per JoD | Jim should have got in equitable split |
|---|---|---|
| Spousal Support | -$25,200.00 | $0.00 |
| Attorneys fees | $15,000.00 | $0.00 |
| **Total adjustments** | **-$10,200.00** | **$0.00** |

| | Jim got per JoD | Jim should have got in equitable split |
|---|---|---|
| **Total available to creditors** | **-$87,270.00** | **-$14,585.00** |
| **What does Jim walk away with? (exempt asset)** | Jim got per JoD | Jim should have got in equitable split |
| **Jim's Fidelity Increase** | **$270,009.00** | **$220,275.00** |

| Marital Asset? TBD | |
|---|---|
| ASSET | VALUE |
| UMCU Checking Ann | $1,000.00 |
| Huntington Savings | $62,000.00 |
| Huntington Checking | $28,000.00 |
| United Technology Employees Savings Account | $14,000.00 |
| Raymond James IRA | $87,500.00 |
| Personal property inc. jewelry, etc.? | ???? |
| **Total** | **$192,500.00** |

# EXHIBIT E - PAGE 001

**Fill in this information to identify your case:**

Debtor 1          **James Edward Riesterer**
           First Name         Middle Name        Last Name

Debtor 2
(Spouse if, filing)   First Name         Middle Name        Last Name

United States Bankruptcy Court for the:   EASTERN DISTRICT OF MICHIGAN

Case number
(if known)

☐ Check if this is an
   amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims     12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:  List All of Your PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims against you?**

    ■ No. Go to Part 2.

    ☐ Yes.

### Part 2:  List All of Your NONPRIORITY Unsecured Claims

3.  **Do any creditors have nonpriority unsecured claims against you?**

    ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

    ■ Yes.

4.  **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  | Total claim |
|---|---|---|

| 4.1 | **American Express/Blue** | Last 4 digits of account number    3513 | $26,103.45 |
|---|---|---|---|

Nonpriority Creditor's Name

**777 American Expressway**
**Fort Lauderdale, FL 33337-0001**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   **Consumer credit**

# EXHIBIT E - PAGE 002

Debtor 1 **James Edward Riesterer**      Case number (if know) _____

---

| 4.2 | **Capital One** | | **Last 4 digits of account number** | **3215** | **$5,317.56** |

Nonpriority Creditor's Name

**P.O. Box 30285**
**Salt Lake City, UT 84130**

**When was the debt incurred?**    **Opened 12/09  Last Active 6/01/16**

Number Street City State Zlp Code

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

■ Other. Specify   **Credit Card**

---

| 4.3 | **Citi/Costco** | | **Last 4 digits of account number** | **5050** | **$26,530.00** |

Nonpriority Creditor's Name

**P.O. Box 790057**
**Saint Louis, MO 63179-0057**

**When was the debt incurred?**

Number Street City State Zlp Code

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

■ Other. Specify   **Consumer credit**

---

| 4.4 | **GE Money Bank** | | **Last 4 digits of account number** | | **Unknown** |

Nonpriority Creditor's Name

**Attn: Bankruptcy Department**
**P.O. Box 689195**
**Roswell, GA 30076**

**When was the debt incurred?**

Number Street City State Zlp Code

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

■ Other. Specify   **Best Buy**

---

Debtor 1  **James Edward Riesterer**

Case number *(if know)*

---

| 4.5 | **Lake Trust Credit Union** | | Last 4 digits of account number | 9760 | | $14,204.51 |

Nonpriority Creditor's Name

**4605 S Old Us Highway 23
Brighton, MI 48114**

When was the debt incurred?    **Opened 05/16  Last Active 5/31/16**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    **2013 Subaru Impreza 2.0 45000 miles Excellent condition - repossessed. Lawsuit against Debtor.**

- ☐ Yes

---

| 4.6 | **Synchrony Financial /hdceap** | | Last 4 digits of account number | 0262 | | $2,000.00 |

Nonpriority Creditor's Name

**P.O. Box 965064
Orlando, FL 32896**

When was the debt incurred?    **Opened 06/16  Last Active 6/20/16**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    **Charge Account**

---

| 4.7 | **University of Michigan Credit Union** | | Last 4 digits of account number | | | $19,995.42 |

Nonpriority Creditor's Name

**333 East William
P.O. Box 7850
Ann Arbor, MI 48107**

When was the debt incurred?

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ☐ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify

---

17-55390-mlo    Doc 1    Filed 09/03/17    Entered 09/03/17 15:20:48    Page 20 of 36

Debtor 1    **James Edward Riesterer**

Case number (if know)

---

| 4.8 | **University of Michigan Health System** | | **$1,000.00** |
|---|---|---|---|

Nonpriority Creditor's Name

**700 KMS Place**
**Ann Arbor, MI 48108-1652**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

Last 4 digits of account number _____

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify   **Medical**

---

**Part 3:**   List Others to Be Notified About a Debt That You Already Listed

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **John W. Butler, Esq.**<br>**24525 Harper Ave.**<br>**Saint Clair Shores, MI 48080** | Line **4.5** of (Check one):<br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |
| | Last 4 digits of account number ____ |
| **Shermeta Law Group, PLLC**<br>**P.O. Box 5016**<br>**Rochester, MI 48308-5016** | Line **4.2** of (Check one):<br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |
| | Last 4 digits of account number ____ |

---

**Part 4:**   Add the Amounts for Each Type of Unsecured Claim

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

|  | | | Total Claim |
|---|---|---|---|
| **Total claims from Part 1** | 6a. **Domestic support obligations** | 6a. $ | 0.00 |
| | 6b. **Taxes and certain other debts you owe the government** | 6b. $ | 0.00 |
| | 6c. **Claims for death or personal injury while you were intoxicated** | 6c. $ | 0.00 |
| | 6d. **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. $ | 0.00 |
| | 6e. **Total Priority.** Add lines 6a through 6d. | 6e. $ | 0.00 |

|  | | | Total Claim |
|---|---|---|---|
| **Total claims from Part 2** | 6f. **Student loans** | 6f. $ | 0.00 |
| | 6g. **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. $ | 0.00 |
| | 6h. **Debts to pension or profit-sharing plans, and other similar debts** | 6h. $ | 0.00 |
| | 6i. **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. $ | 95,150.94 |
| | 6j. **Total Nonpriority.** Add lines 6f through 6i. | 6j. $ | 95,150.94 |

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy